UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| EMMA HILL AND WILLIAM HILL, INDIVIDUALLY AS NATURAL PARENTS OF MICHAEL JOHN HILL, AND EMMA HILL AS ADMINISTRATRIX OF THE ESTATE OF MICHAEL JOHN HILL, DECEASED, <br><br> Plaintiffs, <br><br> vs. <br><br> KONECRANES, INC. AND MORRIS MATERIAL HANDLING, INC., <br><br> Defendants. | CIVIL ACTION NO. <br><br> 4:17-CV-00165 |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs file this Supplemental Brief in Opposition to Defendants' Motion for Summary Judgment and submit the following relevant evidence and rulings obtained <u>after</u> Plaintiffs filed their Response. [Doc. #48]. This newly acquired material reinforces Plaintiffs' arguments and further supports the denial of Defendants' Motion for Summary Judgment.

**I.   THE COURT'S EXCLUSION OF DEFENDANTS' EXPERT UNDERMINES DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.**

On April 15, 2019, Judge Christopher L. Ray granted Plaintiffs' Motion to Exclude the Opinions of Defendants' Expert, James Pritchett. [Doc. #53]. After evaluating the evidence upon which Defendants' expert relied, the Court concluded the evidence was insufficient and Defendants "failed to carry their burden to prove that Pritchett's opinions were anything but *ipse*

*dixit, post hoc* rationales." [Doc. #53 at 19]. As a result of this Order, Defendants no longer have an expert to testify regarding the proximate cause of the crane derailment.

The evidence the Court considered and deemed insufficient to support Mr. Pritchett's causation opinions is identical to the evidence Defendants rely upon in their Motion for Summary Judgment. As a result, this evidence – on its own and without an expert to testify about it – cannot satisfy the ***higher standard*** necessary to obtain summary judgment. Specifically, Defendants cannot show Mr. Hill's employer, International Paper ("IP") was the intervening and proximate cause of the derailment. [Doc. #32 at 6-8]. Plaintiffs, on the other hand, have submitted evidence – including admissible and unchallenged expert testimony – that Defendants were the proximate cause of the crane derailment. [Doc. #48 at 17-23]. Based upon the foregoing, issues of material fact exist regarding causation.

Defendants no longer have an expert to prove an alternative cause of the incident and cannot carry their burden with respect to the affirmative defenses raised in their Answer and Motion for Summary Judgment. For these additional reasons, and consistent with the Court's Order of April 15, 2019, Defendants' Motion for Summary Judgment should be denied.

## II. THE TESTIMONY OF DEFENDANTS' CORPORATE REPRESENTATIVE UNDERMINES THE MOTION FOR SUMMARY JUDGMENT.

On May 22, 2019, Defendants' corporate representative, Robert LoCasale, was deposed. During this deposition, the representative testified regarding elements of Plaintiffs' failure to warn claims – including (1) the duties owed by Defendants (as the author of the operator's manual and inspector of the crane); (2) Defendants' failure to provide sufficient warnings; and (3) Defendants'

failure to properly inspect and document the condition of the crane.[1]  This testimony directly contradicts several arguments asserted in Defendants' Motion for Summary Judgment.

### A. Defendants Had a Duty to Warn Mr. Hill and IP of Foreseeable Dangers When the Crane Was Modernized and Updated.

Defendants overhauled and modernized the subject crane in 2008, expanding the number of motors/drives and adding storm brakes. (LoCasale Dep. at 38:3-40:7)(attached as Ex. A). At the time this work was performed, Defendant Konecranes – as the successor company and by virtue of the overhaul – was the manufacturer of the crane.  After the overhaul, Defendants authored and provided IP with an Operator's Manual covering the operation and maintenance of the entire crane – not just the modifications Defendants made. (*Id*. at 44:16-24).  Defendants could have included any warnings in the manual and did not provide IP with any other instructions regarding the brakes, storm brakes, or safe wind speed prior to the incident. (*Id*. at 44:25-48:7). Defendants further testified the maximum safe wind speed for the subject crane is unique, IP would not know the safe wind speed unless Defendants specified it, and Defendants did not provide IP with information regarding the maximum safe wind speed prior to the incident. (*Id*. at 212:1-213:3, 214:18-23).  Similarly, Defendants could have warned IP not to operate the crane with more than one storm brake out per side, could have included this warning in the manual, and did not provide the warning until after the incident. (*Id*. at 235:14-25, 238:5-239:5).

---

[1] Defendants assert Plaintiffs improperly comingle the elements of their negligence claim with some unpled product liability claim [Doc. # 52 at 9].  Plaintiffs have not – and are not trying to – assert strict liability, manufacturing defect, or design defect product liability claims as Defendants contend.  [Doc. #52 at 3].  Instead, Plaintiffs have asserted negligent failure to warn claims.  The claims involve the failure of Defendants – in their capacity as the manufacturer of the crane/author of the operator's manual for the crane and as the inspection and service contractor – to warn users how to safely operate the crane.  These are ***negligence claims with similar elements*** and relate to work Defendants performed with respect to this crane.  *See Key Safety Systems, Inc. v. Bruner*, 334 Ga. App. 717, 720 (2015)(failure to warn claims against manufacturer regarding operator's manual); *Smith v. Universal Underwriters Ins. Co.*, 752 F.2d 1535, 1538 (11th Cir. 1985)(failure to warn claims against inspection contractor).

This testimony confirms Defendants were responsible for the Operator's Manual and the instructions and warnings contained therein. The warnings contained in this manual were inadequate for the reasons set forth below and in Plaintiffs' initial response brief [Doc. #48]. As a result, Defendants' Motion for Summary Judgment should be denied.

**B. Defendants Failed to Warn Mr. Hill and IP of the Crane's Dangerous Condition and Foreseeable Dangers Associated Therewith.**

Defendants contend they inspected the subject crane, fulfilled their contractual obligations, and informed IP and Mr. Hill of the crane's conditions [Doc. #52 at 4-5]. These arguments are without merit because Defendants now admit: (1) Defendants were *required to inspect* all four storm brakes; (2) Defendants were *required to operate* the crane to confirm all four storm brakes functioned; (3) Defendants were *required to identify* the condition of all four storm brakes in their inspection reports; and (4) ***Defendants completely failed to inspect and/or document the condition of two of the four storm brakes in any of their reports to IP***. (LoCasale Dep. at 62:6-63:12, 111:3-113:13, 119:9-120:10). Defendants' failures to inspect and report the condition of the storm brakes includes Defendants' final inspection on December 15, 2014:

> Q:   Is there a reference in this report to … the storm brakes on Leg 2 being inspected?
> A:   There's no listing of a Leg 2 storm brake.
> Q:   […] Do you know whether the storm brake was inspected on December 15, 2014.
> A:   I have no knowledge.
> Q:   Do you know whether it functioned or not as of December 15, 2014.
> A:   I have no knowledge.
> Q:   It is supposed to be included on this list and inspected by Konecranes, isn't it?
> A:   Yes, sir.
> Q:   What about Leg 3?
> A:   There is no listing of a storm brake.
> Q:   Okay. So, you don't know whether or not it was inspected on December 15, 2014?
> A:   Correct.
> Q:   It's supposed to be inspected?
> A:   Correct.
> Q:   It's supposed to be included in this report?
> A:   Correct.

> Q: And – and as far as you know and Konecranes knows, no information was ever provided to International Paper about storm brakes attached to Gantry Leg 2 or 3 as of this date?
> A: Based on this report, yeah.

(*Id* at 115:24-117:2). Thus, according to Defendants' corporate representative, Defendants repeatedly failed to inspect all four storm brakes, produced inaccurate reports, and failed to identify and warn of dangerous and hazardous conditions.[2]

With respect to the two storm brakes inspected and referenced in Defendants' inspection reports (Leg 1 and Leg 4), Defendants failed to prioritize the repairs and identify the risk associated with operating the crane with inoperable storm brakes. Defendants now admit storm brakes are a safety function intended to protect the crane and operator. (*Id*. at 60:25-61:6). They also concede a "life-threatening condition" existed with respect to the storm brakes at the time of the December 2014 inspection. (*Id.* at 85:1-12). Despite these admissions, Defendants failed to classify the inoperable storm brake as a priority "10" in the inspection reports. Defendants define "10" as:

> **Caution. Potential danger. Do not use. Conditions which may lead to dangerous consequences. May be life-threatening conditions**.

(*Id*. at 89:12-89:25). Thus, contrary to Defendants assertion that it "cannot tell IP how to operate the Crane, or when to shut it down" [Doc. #32 at 11; Doc. #33 at ¶ 20], Defendants actually created a priority classification to convey such a warning – but failed to use it in the December 2014 report to IP or any other inspection reports. (*Id.* at 90:1-23, 120:24-121:7).

Defendants similarly failed to fulfill their duty to immediately warn IP and Mr. Hill of conditions requiring "emergency repairs." In their Reply Brief, Defendants assert storm brakes

---

[2] According to Defendants, "Plaintiffs' Response would have this court believe that the Defendants never informed International Paper ('IP') of the status of the brakes. That is entirely inaccurate." [Doc. #52 at 5]. In fact, Defendants now admit they never inspected two storm brakes (Leg 2 and Leg 3) and never informed IP of their status, directly contradicting the arguments previously offered in support of the Motion for Summary Judgment. (*Id* at 119:9-120:12).

were not "emergency repairs."[3] However, Defendants now admit (1) the absence of storm brakes is a safety function that could warrant emergency repairs; (2) Defendants were required to immediately inform IP of any risk of injury or death to an operator; and (3) Defendants were required to recommend the crane be shut down until necessary repairs were made. (*Id*. at 58:17-59:7, 60:18-61:2, 75:5-17, 76:22-77:8). This information was to be conveyed to IP *before the inspector leaves the plant*. (*Id*. at 121:14-20). However, Defendants are not aware of "anyone telling IP the condition of the crane in December 2014 required it to be shut down." (*Id*. at 78:7).

While Defendants also argue they were not aware of the condition of the crane six months after the inspection and "there is no legal cause of action for Konecrane's inability to see the future" [Doc. #52 at 5], Defendants knew the dangerous and hazardous condition of the crane. After the December 2014 inspection, Defendants worked on the crane 4-5 different times, spending at least 12-13 days at the facility *making the repairs Defendants identified in the December 2014 inspection report, but not repairing the storm brakes*. (*Id*. at 140:8-141:1, 170:6-18). The repairs included a shut down for two days of repairs just days before the subject incident. (*Id*. at 141:7-12). Thus, Defendants were present at the plant, knew the crane was being operated, knew the storm brakes were inoperable, and did not warn IP to shut down the crane. (*Id*. at 142:1-5).

Defendants were admittedly responsible for prioritizing the work performed on the crane and Defendants understood IP was relying upon these recommendations. (*Id*. at 73:14-74:21, 134:7-12). Despite this knowledge, Defendants never identified the storm brakes as the number one priority and never recommended the storm brakes be repaired before other work was performed. Defendants also understood IP was waiting for the repairs to be completed before

---

[3] Defendants argued to this Court "no imminent emergency repairs were needed because the crane functioned properly for another six months…." [Doc. #52 at 4-6].

another periodic inspection was performed. Yet, Defendants never told IP they should have the inspection despite the repairs. (*Id.* at 177:11-178:20).

In addition, Defendants admittedly worked on the storm brakes after the December 2014 inspection and knew another storm brake failed:

> Q: So Konecranes knows as of December 2014, at least one storm brake wasn't working, right?
> A: That's correct.
> Q: And they also know as of – I guess it was March of 2015 that potentially another storm brake wasn't working, right?
> A: That is correct.
> Q: And then potentially, they didn't even inspect two of the storm brakes based upon our review – of all these inspection reports, right?
> A: Correct.
> Q: So, we have no idea at this point as of December 2014 which brakes were working and which ones were not because Konecranes failed to document it?
> A: With respect to the storm brakes, yes.
> Q: All right. But Konecranes, at least, knew one was out and maybe two before the incident?
> A: That's correct sir.
> […]
> Q: At that point in time, did Konecranes have any obligation to tell the customer: "Hey, you at least, have one storm brake out of service. You may have two storm brakes out of service. You may have all storm brakes out of service, for all we know"?
> A: Yes.
> Q: All right. Did they do it?
> A: I didn't see any document or a verbal communication that I am aware of.

(*Id.* at 220:22-223:12). Not only did Defendants admittedly fail to warn IP not to operate the crane, they actually asked IP to remove the storm brake and ship it to Defendants for inspection. (*Id.* at 145:23-148:20). Despite additional communications regarding the results of the brake inspection, the repair of the storm brake, and the replacement of the storm brake, Defendants did not warn IP not to operate the crane. (*Id.* at 150:1-154:13, 155:4-159:16, 220:22-223:12).

Given this new testimony and the other evidence set forth in Plaintiffs' initial response [Doc. #48], Defendants' Motion for Summary Judgment should be denied. Defendants were obligated to warn IP and Mr. Hill of foreseeable dangers (as both the author of the Operator's

Manual and the crane inspector), failed to properly inspect the crane, and failed to adequately warn of the crane's dangerous and hazardous condition. As a result, issues of material fact exist regarding all of Plaintiffs' negligence and negligent failure to warn claims.

### III. DEFENDANTS' DRAMATIC CHANGE IN POSITION WITH RESPECT TO ALLEGED SUBSEQUENT REMEDIAL MEASURES UNDERMINES THE MOTION FOR SUMMARY JUDGMENT.

Defendants previously argued in their Reply Brief evidence concerning the crane manual, wind speed, and warnings were not relevant or admissible. [Doc. #52 at 10]. This argument was presumably based upon Defendants' assertion they did not manufacture the crane. As set forth above, Defendants now admit they authored the Operator's Manual, could have included warnings in the Manual regarding maximum safe wind speeds and the number of brakes necessary to operate the crane, and never provided any other information to IP or the operators regarding these items. (LoCasale Dep. at 44:16-48:7, 212:1-213:3, 214:18-23, 235:14-25, 238:5-239:5). Thus, Defendants were responsible for adequately warning and instructing IP and operators regarding the conditions in which the crane should be operated.

Defendants also assert evidence of the three procedures (Go/No-Go List, Weather Procedure, Crane Operating Procedure) developed after the incident constitute Defendants' subsequent remedial measures subject to Defendants' Motion in Limine [Doc. #27]. Given Defendants' dramatic change in positions regarding alleged "subsequent remedial measures," the three procedures referenced by Plaintiffs and their experts are now admissible. After the Court denied Defendants' Motion to Exclude the three procedures Defendants claimed to create and implement [Doc. #53], Defendants' corporate representative testified the procedures were actually created, authored, and implemented by IP – and Defendants were merely hired to provide certain technical information that would not have otherwise been provided to IP. (*Id*. at 226:16-227:12,

235:14-25, 239:9-240:10, 244:8-22, 245:9-246:7). Defendants reinforced this position in the recently filed Motion to Reconsider, disavowing all responsibility for the procedures:

> While Defendants were conferred with in the creation of these documents, the Subsequent Remedial Measures *are 100%, undeniably, IP documents (and not Defendants)*. All three documents are clearly marked with the International Paper Company logo, and all three documents state on the face of the document that they were "written" and or "approved" by IP.

[Doc. #55 at 10]. Because a non-party (IP) actually developed and implemented these procedures, they are not subsequent remedial measures made by Defendants and are admissible for any purpose. *See Millennium Partners, L.P.*, 494 F.3d at 1303 (11th Cir. 2007)(Rule 407 does not prohibit evidence of repairs made by a non-party).[4] Thus, for the reasons set forth herein and expanded upon in Plaintiffs' Response to Defendants' Motion to Reconsider [Doc. #56], the three procedures are admissible and should be considered by this Court.

## IV.   CONCLUSION

Based upon the recent rulings and testimony obtained after Plaintiffs filed their initial response, as well as the arguments and evidence set forth in Plaintiff's initial response, Defendants' Motion for Summary Judgment should be denied.

Respectfully submitted this 10th day of June, 2019.

                                  CLARK, SMITH & SIZEMORE, LLC

                                  */s/ Richard L. Sizemore*
                                  RICHARD L. SIZEMORE
                                  *Attorney for Plaintiffs*

---

[4] *See also Mehojah v. Drummond*, 56 F.3d 1213, 1215 (10th Cir. 1995)(holding that Rule 407 "does not apply to subsequent remedial measures by non-defendants"); *TLT-Babcock, Inc. v. Emerson Elec. Co.*, 33 F.3d 397, 400 (4th Cir. 1994)(holding that "evidence of subsequent repairs may be admitted where those repairs have been performed by someone other than the defendant"); *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990)(holding that "[a]n exception to Rule 407 is recognized for evidence of remedial action…under taken by a third party"); *Dixon v. Int'l Harvester, Co.*, 754 F.3d 573, 583 (5th Cir. 1985)(Rule 407 does not bar evidence of repairs made by a non-defendant); *Lolie v. Ohio Brass Co.*, 502 F.2d 741, 744 (7th Cir. 1974)(Rule 407 has no applicability "when the evidence is offered against a party…which did not make the changes"); *Steele, Texas Emp. Ins. Ass'n v. Wiedmann Mach. Co.*, 280 F.2d 380, 382 (3rd Cir. 1960)(holding the rule excluding evidence of repair made after an accident is not applicable when the person who made the repairs was not a party to suit); *Dewit v. UPS Ground Freight, Inc.*, 2017 U.S. Dist. LEXIS 213728 at *12-13 (N.D. Fla. 2017)(Rule 407 "does not apply to subsequent remedial measures taken by non-parties").

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| EMMA HILL AND WILLIAM HILL, INDIVIDUALLY AS NATURAL PARENTS OF MICHAEL JOHN HILL, AND EMMA HILL AS ADMINISTRATRIX OF THE ESTATE OF MICHAEL JOHN HILL, DECEASED, | CIVIL ACTION NO. 4:17-cv-00165 |
| Plaintiffs, | |
| vs. | |
| KONECRANES, INC. AND MORRIS MATERIAL HANDLING, INC., | |
| Defendants. | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all parties were served with a copy of the foregoing PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITON TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT by filing the same with the Clerk of Court using the CM/ECF system which will automatically electronically mail notification of such filing to the following attorneys of record:

R. Bates Lovett
Fisher Broyles, LLP
35 Barnard Street, Suite 300
Savannah, Georgia  31401

Respectfully submitted this 10th day of June, 2019.

CLARK, SMITH & SIZEMORE, LLC
*/s/ Richard L. Sizemore*
RICHARD L. SIZEMORE
Georgia Bar No. 649449
